IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | **CRIMINAL NO. GLR-23-26** |
| | * | |
| **RYAN E. DALES,** | * | |
| | * | |
| Defendant. | * | |
| | * | |
| ******* | | |

### GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

The Government respectfully moves *in limine* for a ruling from the Court that:

(1) admits evidence intrinsic to the charges, or, in the alternative, pursuant to Fed. R. Evid. 404(b);

(2) precludes evidence or argument concerning alleged negligence by the victims in this case—the Maryland Department of Labor (DOL) or any other victim entity; and

(3) precludes evidence or argument regarding potential punishment or concerning plea discussions, including whether any plea offer has been made or the terms of any such offer.

For the reasons that follow, the Government's motion should be granted in its entirety.

### BACKGROUND

This matter arises out of Defendant's receipt of fraudulently-obtained funds and property in connection with various fraud schemes: (1) a scheme to obtain fraudulent unemployment insurance (UI) benefits from the Maryland DOL; and (2) a scheme to obtain high-end lawn mowers with a line of credit using victim personal identity information (PII) and counterfeit IDs for the purpose of reselling the lawnmowers for cash. This matter also arises out of Defendant's possession of two firearms (including an unserialized "ghost gun") and fentanyl, which were

1

seized during a January 20, 2023 search of Defendant's residence located at 900 E. Fort Avenue, Apt. 537—the "Anthem House," a luxury apartment building in the Locust Point area of Baltimore City.

On January 25, 2023, Defendant was indicted by a federal grand jury in the District of Maryland with Wire Fraud, in violation of 18 U.S.C. § 1343 and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).  ECF No. 15.  The Wire Fraud charges pertained to Defendant's receipt of fraudulent UI benefits.  *Id.* at 1-4.

On May 17, 2023, the grand jury returned a Superseding Indictment charging Defendant with additional counts of Wire Fraud (Counts Five to Seven), a related Aggravated Identity Theft count (Count Eight), as well as Possession With Intent to Distribute Fentanyl, in violation of 18 U.S.C. § 841(a)(1) (Count Three) and Possession of a Firearm in Furtherance of a Drug Trafficking Activity, 18 U.S.C. § 924(c)(1)(A)(i) (Count Four).  ECF No. 35.  As noted, the additional Wire Fraud charges relate to Defendant's scheme to obtain high-end lawn mowers valued at more than $14,000 using victim PII, with the ultimate goal of selling them at a deep discount for cash.  *Id.* at 8-12.  The drug and related firearm charges arose out of the results of the search of Defendant's residence on January 23, 2023.

A motions hearing was held on May 3, 2024.  *See* ECF No. 76-1.  The Court denied Defendant's Motion to Suppress, and granted in-part Defendant's motion to sever, ordering that the fraud and identity theft Charges are to be tried separately from the firearms and narcotics charges.  ECF No. 62.  A pre-trial conference is scheduled for October 28, 2023.

The two trials in this matter—currently scheduled to be tried back-to-back—are set to begin on December 2, 2024.  ECF No. 65.

I.      **Motion *In Limine* Concerning Uncharged Fraud And Identity Theft Transactions.**

     **A. Other Uncharged Instances Of Defendant Engaging In Fraud And Identity Theft In Connection With The Scheme To Defraud Are Intrinsic Evidence.**

The Government first respectfully requests that the Court admit evidence concerning uncharged instances both in Maryland and outside of it in which Defendant engaged in fraudulent activity materially identical to the activity charged in Counts Five through Seven of the Superseding Indictment. All this evidence is intrinsic evidence that the Court should admit.

"Rule 404(b) limits only the admission of evidence of acts extrinsic to the one charged, but does not limit the admission of evidence of intrinsic acts." *United States v. Lightly*, 616 F.3d 321, 352 (4th Cir. 2010). Prior-acts evidence is intrinsic if it "arose out of the same series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Kennedy*, 32 F.3d 875, 885 (4th Cir. 1994) (quotation omitted). Evidence of "[o]ther criminal acts [is] intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Chin*, 83 F.3d 83, at 87-88 (4th Cir. 1996) (internal quotation and citation omitted). Such "intrinsic act" evidence is ordinarily admissible as a matter of course.

This standard is easily satisfied here. Counts Five, Six, and Seven each charge Wire Fraud, in violation of 18 U.S.C. § 1343, and allege Defendant's use of the identities of multiple victims to obtain property—riding lawnmowers valued at more than $14,000 each—on credit. Count Five relates to a September 13, 2022 transaction using victim MC's PII. Count Six relates to a September 20, 2022 transaction using victim BL's PII. Count Seven relates to a September 27, 2022 transaction using victim JS's PII. Count Eight charges Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1), in connection with the Wire Fraud Counts charted in Counts Five through Seven.

The intrinsic evidence the Government seeks to introduce are merely additional executions of the fraud and identity theft scheme—multiple instances in which Defendant attempted to obtain property using victim PII from July 2021 to September 2022—including in the precise timeframe charged in the Indictment and in the precise manner as charged in the Indictment. All of these instances are part of a single criminal episode: Defendant's use of multiple victim identities to obtain property through fraud for well over a year.

More specifically, the trial evidence will show that Defendant on July 21, 2021 attempted to obtain cell phones from an AT&T store using the identity of victim JS—the same individual whose identity was used in connection with the crime charged in Count Seven, in which Dales obtained a lawnmower valued at over $14,600.[1] And it will further show that Defendant on June 15, 2022, June 27, 2022, September 16, 2022, and September 22, 2022 attempted to obtain and did obtain high-end lawnmowers on credit from various outdoor equipment retailers in Maryland, Delaware, and Virginia using victim PII—just as he did in connection with the counts charged in Counts Five through Seven.

The Government will establish this conduct at trial through, among other things, screenshot images from Defendant's mobile device in which victim identifiers from the uncharged transactions are present, historical cell site location information putting Dales's mobile device in the area of certain of the victim stores around the time of the fraudulent transactions, business records from certain of the victim stores showing Dales's photo on a fraudulent driver's license with victim PII that were provided by Dales during the fraudulent purchases (just as he did during the transactions charged in Counts Five through Seven) and, at times, surveillance images showing Dales conducting the fraudulent transactions.

---

[1] During the execution of the search warrant at Dales's residence, a fraudulent South Carolina driver's license bearing Dales's photo but victim JS's name was located and seized by law enforcement.

4

All of this evidence is intrinsic to the crimes charged in Counts Five through Eight. *See United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) ("Evidence of uncharged conduct is not 'other crimes' evidence subject to Rule 404 if the uncharged conduct 'arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial.'"); *United States v. Bajoghli*, 785 F.3d 957, 964 (4th Cir. 2015) (district court abused its discretion in limiting government's proof to that which was directly relevant to one or more of 53 executions of fraudulent scheme charged in indictment, without taking into account relevance of uncharged conduct to overarching scheme, offered to show defendant's fraudulent intent and willful, guilty conduct).

Indeed, *United States v. Bajoghli*, 785 F.3d 957 (4th Cir. 2015), is particularly instructive. There, the Fourth Circuit reversed the district court's decision limiting the government's proof in connection with health care fraud charges and concluded that evidence of conduct not charged in the "specific execution" of a fraudulent scheme may still be relevant to the "nature and scope of the scheme charged." *Id.* at 964. The Court reasoned that "[w]hile fraud can be committed simply by engaging in an isolated transaction, a scheme to defraud requires a plot, plan, or arrangement that is executed by a fraudulent transaction." *Id.* at 962-63 (emphasis in original). The Fourth Circuit noted that "evidence of the entire scheme [was] relevant to proving each particular execution." *Id.* at 963. So too here. Simply put, the uncharged transactions by which Defendant obtained and attempted to obtain property using the PII of multiple victims, including the PII of the victim of the transaction charged in Count Seven, is relevant to the "nature and scope of the scheme charged." *Bajoghli*, 785 F.3d at 964; *United States v. Siegel*, 536 F.3d 306, 320-21 (4th Cir. 2008) (evidence of prior identity theft and fraud admissible as "intrinsic" to charged offenses of fraud, identity theft, and murder, and reversing district court's pretrial ruling to the contrary).

And all of this evidence tends to logically prove that Defendant committed the fraudulent transactions charged in Counts Five to Seven and the Aggravated Identity Theft Charged in Count Eight and completes the story of the crime. *See, e.g.*, *United States v. Lee*, 60 F. App'x 425, 427 (4th Cir. 2003) (unpublished) (evidence of 141 uncharged returns not within Rule 404(b) in mail fraud matter based on filing bogus state and federal tax returns as it arises from the same series of transactions as the charged crime and allows prosecutors to give a complete story of the charged crime).

Nor is such intrinsic evidence unfairly prejudicial. Intrinsic and extrinsic evidence are subject to Fed. R. Evid. 403, which excludes relevant evidence if its probative value is "substantially outweighed" by the danger of unfair prejudice. *United States v. Blauvelt*, 638 F.3d 281, 292 (4th Cir. 2011). "Unfair prejudice" is an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Because the admission of relevant evidence is encouraged, exclusion under Rule 403 is rarely warranted. *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007). Indeed, the admission of evidence does not result in unfair prejudice under Fed. R. Evid. 403 where it does not involve conduct any more sensational or disturbing than the crimes with which the defendant was charged. *See, e.g.*, *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995); *United State v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). Here, of course, the uncharged conduct is no more sensational or disturbing than the conduct charged in Counts Five to Eight: The nature of the charged and uncharged conduct is materially identical. The evidence is intrinsic and should be admitted.

### B. Even if the Evidence is Not Intrinsic, it is Still Admissible Under Fed. R. Evid. 404(b).

Even if the uncharged conduct is not intrinsic—and it is—it is still nevertheless admissible pursuant to Fed. R. Evid. 404(b). Federal Rule of Evidence 404(b) "prohibits evidence of other crimes, wrongs, or acts solely to prove a defendant's bad character, but such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *United States v. Byers*, 649 F.3d 197, 206 (4th Cir. 2011) (internal quotation marks, citations, and alterations omitted). The rule is one of "inclusion, 'admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition.'" *Id.* (quoting *United States v. Young*, 248 F.3d 260, 271-72 (4th Cir. 2001)).

The test for admissibility under Rule 404(b) has three parts. *First*, the evidence must be relevant to an issue other than character, such as identity, opportunity, knowledge, modus operandi, or intent. *United States v. Siegel*, 536 F.3d 306, 317 (4th Cir. 2008). Evidence is relevant if it has "a tendency to show that any consequential act is more probable or less probable than it would be without the evidence." *E.g.*, *United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir. 1996)). *Second*, the evidence must be "necessary," in that it is an essential part of the crimes on trial or furnishes part of the context for the crimes. *Siegel*, 536 F.3d at 319.[2] *Finally*, the evidence must be reliable. *Siegel*, 536 F.3d at 317. And it likewise must satisfy the requirement in Rule 403 that the probative value of the evidence must not be "substantially outweighed" by unfair prejudice. *Id.* at 319.

All these requirements are satisfied here. First, this evidence is relevant for a number of non-character reasons, including (but not limited to) several of the reasons enumerated in Rule

---

[2] That the evidence was "not critical to the prosecution's case [] does not render it unnecessary for purposes of Rule 404(b)." *United States v. Rooks*, 596 F.3d 204, 211 (4th Cir. 2010).

404(b). These uncharged transactions plainly demonstrate Defendant's motive—his goal to exploit victim identities to obtain property that could be resold for cash. They show Defendant's intent, knowledge, and lack of mistake and that the fraudulent purchases charged in Counts Five to Seven and the related identity theft conduct charged in Count Eight—and the manner in which Defendant executed those purchases—were not unwitting because he made the same fraudulent misrepresentations in connection with the uncharged transactions. And the uncharged transactions also reflect preparation and planning. Indeed, they were carried out in essentially the same manner as the charged transactions—through use of victim identities appropriated by Dales. Second, the evidence is necessary because it was "an essential part of the crimes on trial" and because it "furnishe[d] part of the context of the crime." *United States v. Mark*, 943 F.2d 444, 448 (4th Cir. 1991) (internal quotation marks and citations omitted). Defendant will most assuredly pursue a defense that puts, among other things, his state of mind and identity, at issue. Accordingly, the Court should allow the government to introduce this relevant evidence on the issue of Dales's state of mind and identity. *See, e.g.*, *United States v. Byers*, 649 F.3d 197, 206 (4th Cir. 2011) (cross-examination of government witnesses created a significant credibility issue which made the 404(b) evidence necessary). Finally, the proffered evidence here satisfies the element of reliability. The reliability of the evidence will be established by a preponderance of the evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988) (standard of proof for prior acts under Rule 404(b) is preponderance of the evidence), and, in any event, defense counsel will have the ability to test its reliability at trial.

Thus, even if the Court determines that the uncharged transactions are not intrinsic evidence, it is still nevertheless admissible under Fed. R. Evid. 404(b). Likewise, for the reasons already discussed above, no unfair prejudice will result were the Court to admit evidence

concerning the uncharged transactions. In any event, a curative instruction for any 404(b) evidence that is admitted—potentially given both at the time the evidence is introduced and at the end of the case—will ensure that the evidence is not misused by the jury and will decrease the potential for any prejudice.

**II.     Motion *in Limine* Seeking Preclusion Of Evidence Or Argument Concerning Alleged Negligence By The Victims In This Case.**

The Government next moves to preclude any evidence and/or argument by the defense relating to alleged negligence by any of the victims in this case, including the Maryland Department of Labor (which provided the fraudulently-obtained UI benefits, as described in Count One) and TD Bank N.A. (which provided the line of credit in connection used in connection with the fraudulent transactions, described in Counts Five to Seven). Simply put, any evidence relating to victim negligence is irrelevant to the question of Defendant's guilt and inadmissible as a defense.

It is no defense to fraud to "blame the victim," just as it is no defense to burglary charges that the victim left his front door unlocked. "The Fourth Circuit has held that evidence of a fraud victim's negligence or lack of diligence is not a defense to bank fraud." *United States v. Gaver*, Crim. No. RDB-17-640, 2018 WL 3475455, at *2 (D. Md. Jul. 19, 2018) (citing *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000)). "The susceptibility of the victim of the fraud, in this case a financial institution, is irrelevant to the analysis: 'If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright." *Colton*, 231 F.3d at 903.

What's more, even knowledge or complicity on the part of any individual bank employee "would also not be a defense to bank fraud." *Gaver*, 2018 WL 3475455, at *2; *see also United States v. Vinson*, 852 F.3d 333, 351 (4th Cir. 2017) ("That [three bank officials] were aware of all the loan terms is not a valid defense for [the defendant] on the bank fraud conspiracy charge, in

9

that such bank officers were part and parcel of the conspiracy to both defraud the banks and obtain bank funds by false and fraudulent pretenses."); *United States v. Jimenez*, 513 F.3d 62, 74 (3d Cir. 2008) ("[I]t is not a defense to the charge that an [account holder] colluded with [a bank officer] to commit bank fraud. It is the financial institution itself—not its officers or agents—that is the victim of the fraud [§ 1344] proscribes.").

Courts have routinely and consistently excluded such "blame the victim" evidence. *See United States v. Lindsey*, 850 F.3d 1009, 1014 (9th Cir. 2017) (holding that a lender's negligence "does not mean lenders can be victimized by intentional fraudulent conduct with impunity merely because the lenders were negligent, or even because the lenders intentionally disregarded the information in a loan application"); *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) (en banc) ("[W]hatever role, if any, a victim's negligence plays as a bar to civil recovery, it makes little sense as a defense under a criminal statute that embraces 'any scheme or artifice to defraud.' A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence."); *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) ("The susceptibility of the victim of the fraud, in this case a financial institution, is irrelevant to the analysis: If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright." (internal quotation marks omitted)); *United States v. Allen*, 201 F.3d 163, 167 (2d Cir. 2000) (per curiam) ("The victim's negligence in permitting a crime to take place does not excuse the defendant from culpability for [the] substantive offense."); *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct."); *United States v. Moore*, 923 F.2d 910, 917 (1st. Cir. 1991) ("[I]t is not a defense that the bank might have prevented its losses had it better internal controls or procedures."); *United States v.*

*Winkle*, 477 F.3d 407, 418 (6th Cir. 2007) (approving the exclusion of an FDIC report that criticized the bank fraud victim's failure to detect a fraud scheme); *United States v. Thomas*, 377 F.3d 232, 243-44 (2d Cir. 2004) (affirming restrictions on cross of victim; rejecting defendant's argument that victim's foolishness vitiated defendant's fraudulent intent).

Because the issue of whether the Maryland DOL or TD Bank or any other victim in this case were negligent is irrelevant, Defendant should be precluded from introducing evidence and/or argument designed to prove victim negligence, such as attacking the internal controls of any victim, their susceptibility to fraud, or their purported failure to discover it. In any event, even if Defendant was permitted to prove lender negligence, it would not be a defense to the fraud crimes for which he is charged: Wire Fraud and Aggravated Identity Theft. Accordingly, the Court should preclude any such evidence or argument.

### III. Motion *In Limine* Regarding References to Plea Negotiations and Punishment.

Finally, the Government moves to preclude evidence or argument regarding potential punishment (including the potential for mandatory minimum sentence) or, relatedly, any evidence or argument concerning plea discussions, including whether any plea offer has been made or the terms of any such offer. Such evidence and argument are irrelevant to the issue of a defendant's guilt or innocence.

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991); *Shannon v. United States*, 512 U.S. 573, 579 (1994) (providing jurors with information regarding the potential sentence "invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion"). So too here.

Thus, because any evidence or argument concerning plea discussions and punishment are irrelevant, highly prejudicial, and not an area of proper concern for the jury, the Court should grant

11

the Government's motion.

IV. **CONCLUSION**

For all the above reasons, the Government's motions *in limine* should be granted in its entirety.

                                  Respectfully submitted,

                                  Erek L. Barron
                                United States Attorney

By:      /s/
        Paul A. Riley
        Assistant United States Attorney
        36 S. Charles Street, 4th Fl.
        Baltimore, Maryland 21201